ACHSAH A. LARISON et al., appellants,

*v.*

SARAH POLHEMUS et al., respondents.

1. It appearing that two sons had worked their father's farms, under an agreement that they should do so until they had accumulated for him a fund of $12,000, and then they should have the farms free of rent during his life, and that the specified sum had been gathered about a year before the father's death, and thereafter the sons had enjoyed the use of the farms free until their father died—*Held*, that the sons had no reason to complain, on appeal, that the chancellor had made too small an allowance to them for services rendered under that contract.

2. Parties who, in their pleadings and proofs, have insisted that they were not accountable to him for the rental value of land of which the ancestor died seized, because they were in possession as equitable owners, cannot, at the hearing, shift their ground, and claim that they were tenants of the ancestor's widow, who might have been entitled to hold the land until her dower was assigned, but who has disclaimed such a right.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Larison* v. *Polhemus, 9 Stew. Eq. 506.*

*Mr. James Buchanan,* for appellants.

*Mr. W. H. Vredenburgh,* for respondents.

The opinion of the court was delivered by

DIXON, J.

According to the list of causes, two appeals were to be presented to the court in this case, of which one seems to have been instituted on behalf of the complainants in the original bill, and the other on behalf of John and George Polhemus, two of the defendants. According, however, to the case laid before us, and to the brief of counsel on one side, only the latter appeal has

Larison *v.* Polhemus.

been prosecuted to issue, and we have therefore considered merely such questions as this appeal raises.

The original bill was filed by Achsah A. Larison and others, to obtain a partition among the heirs of Tobias Polhemus, of the real estate whereof he died seized, including the "Craft" and "Hendrickson" farms, and to charge against the shares of John and George Polhemus, two of these heirs, the rental value of those farms, which they respectively had occupied since Tobias's death, on March 10th, 1879. John and George answered, setting up that they equitably owned the "Craft" and "Hendrickson" farms, under an agreement with their father, Tobias, made many years before, to the effect that if they would work the farms, and give their father the surplus above their living, until a fund of $12,000 was accumulated and put at interest, so that he and his wife should have enough to live on, then the "Craft" farm should belong to John, and the "Hendrickson" farm to George, in pursuance whereof they claimed that they had performed their part of the contract by the spring of 1878, and then their father had given up the farms to them respectively.

Soon after filing their answer, these defendants presented a cross-bill, alleging the same state of facts, and praying for the specific performance of the bargain, by a decree that the other heirs should convey the farms to them, or such other decree as would vest in them their equitable rights, and secure to them the results of their labor, according to the true intent of said bargain.

On final hearing, the vice-chancellor advised a decree, which was made February 13th, 1883, that the agreement set up in the answer and cross-bill had not been proved as a contract to convey the farms, and that the prayer of the cross-bill should be denied. He, however, reached the conclusion that a contract to give up to these sons the rents, issues and profits of the farms was established, and had been actually executed, by the sons earning the specified sum before the spring of 1878, and by the father's then surrendering the farms to them for use and occupation free of rent; but he further held that the sons' right of possession under this contract ended at their father's death.

No complaint is made in this court that these conclusions are not warranted by the evidence, and upon them as a basis the vice-chancellor proceeded to take an account of the sums with which the sons should be charged for the use of the farms which they were still holding at the time of final decree.

By decree dated May 14th, 1884, he makes an allowance to the sons for services rendered in working the farms during a period beginning December 5th, 1873, six years before the filing of the cross-bill, and ending in the spring of 1878, when the farms were given up to them, and charges them with rental value from the time of their father's death.

From this decree the sons appeal, insisting, first, that the allowance to them should begin with the beginning of their services, which was many years prior to 1873.

Accepting as true the conclusions before mentioned, which are not here disputed, the sons cannot be aggrieved by the smallness of the allowance for services rendered. Those services were performed under an express contract, and the rights to which they gave rise were simply such as that contract specified. According to its terms, the surplus derived from the farms under the management of the sons, was to belong to the father until it amounted to $12,000, and in consideration thereof the sons were thereafter to have the free use of the farms during the father's life. Whether one of these things would be equivalent to the other, was a matter for the parties to decide before they entered into the stipulation, but the contract being made, the court has no further duty than to secure to each party what they have bargained for. This was done for the sons. When the vice-chancellor decided that they should pay no rent for the use of the farms between the spring of 1878 and their father's death; when he went beyond, and made a pecuniary allowance to them for previous services, we do not see on what principle they can complain that the allowance is too small. If they are to be paid what those services were worth, then they must be charged with the rental value of the farms during the whole period of their occupancy while their father lived, and the contract which they have established must be disregarded. Such a position the ap-

pellants are not at liberty to take, and therefore this portion of the decree cannot be disturbed. This view of the case renders it unnecessary to consider whether the claim of the sons for remuneration is one that can properly be set up in a suit for partition.

Another ground of appeal is that the appellants have been charged with rent for these farms from the death of their father, they insisting that they are chargeable with such rent only from the death of his widow, who lived until September 30th, 1880. Their claim is that she was entitled to the possession of these farms as the messuage of her deceased husband's mansion-house, her dower not having been assigned, and that their occupancy being with her consent, they are not responsible to the heirs for rental value.

But both the answer of these sons, in which the widow joined, and their cross-bill expressly aver that they held possession under a claim of title in themselves, and not in the widow, and that she disclaimed any dower right in these farms; nor is it anywhere in the pleadings or proofs suggested that they were her tenants, or that their possession was hers. It is now, therefore, too late for them to make such a claim.

The last cause of appeal is that the rents charged against the sons since their father's death are excessive. After careful examination of the testimony, we are not disposed to interfere with the estimates of the vice-chancellor.

The decree below should be affirmed.

*Decree unanimously affirmed.*